UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 10-1966 JNE/AJB
_____

_____

AMY GOODMAN, NICOLE SALAZAR and
SHARIF ABDEL KOUDDOS,

Plaintiffs,

v.

CITY OF ST. PAUL, ET AL.,

Defendants

_____

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## THE FEDERAL DEFENDANTS' MOTION TO DISMISS

Albert T. Goins (MN # 126159)
301 Fourth Avenue South
378 Grain Exchange Building
Minneapolis, Minnesota 55415
Tel: (612) 339-3848
Fax: (612) 339-3853

Bruce D. Nestor (MN # 318024)
3547 Cedar Avenue South
Minneapolis, Minnesota 55407
Tel: (612) 659-9019
Fax: (612) 436-3664

Anjana Samant (pro hac vice, NY # 4267019)
Alexis Agathocleous (pro hac vice, NY # 4227062)
William P. Quigley (pro hac vice, NY # 4870366)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York New York 10012
Tel: (212) 614-6445
Fax: (212) 614-6499

Steven Alan Reiss (pro hac vice, NY # 2167864)
Jennifer H. Wu (pro hac vice, NY # 4312625)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Christine T. Di Gugliemo (pro hac vice, DE # 4848)
Weil, Gotshal & Manges LLP
1201 N. Market St., Suite 1402
Wilmington, DE 19801
Tel:  (302) 656-1034
Fax:  (302) 656-1405

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

INTRODUCTION AND BACKGROUND ..................................................................... 3

ARGUMENT ........................................................................................................ 4

I.     Standard of Review ................................................................................... 4

II.    The Federal Defendants Are Not Entitled to Dismissal of the Constitutional Claims Because the Amended Complaint Alleges that Special Agent Luley Violated Plaintiffs' Clearly Established Constitutional Rights ............................... 5

      A.    Plaintiffs' Allegations Concerning Seizure of the Plaintiffs' Press Passes State a Claim for Violations of Plaintiffs' Clearly Established First Amendment Rights ........................................................... 6

            1.    Plaintiffs' First Amendment right to gather information regarding the Convention and surrounding events was clearly established in September 2008 ........................................... 7

            2.    Special Agent Luley's conduct, as alleged, violated Plaintiffs' clearly established First Amendment rights .................................... 10

      B.    Plaintiffs' Allegations Concerning the Warrantless Seizure of the Press Passes State a Claim for Violations of Plaintiffs' Clearly Established  Fourth Amendment Rights ....................................................... 13

III.    Plaintiffs Have Stated a Claim for Battery Against the Federal Defendants ......... 18

IV.    The Federal Defendants Are Not Entitled to State Law Official Immunity .......... 20

V.    Plaintiffs Have Standing to Pursue Claims for Declaratory and Injunctive Relief Against the Federal Defendants ................................................................. 23

CONCLUSION ................................................................................................... 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdell v. City of New York*,
   No. 05 Civ. 8453(RJS)(JCF), 2009 WL 1270455 (S.D.N.Y. May 5, 2009) ................ 25

*Am. Broad. Cos. v. Cuomo*,
   570 F.2d 1080 (2d Cir. 1977) .................................................................................. 8, 9

*Arias v. USCIS*,
   Civ. No. 07-1959 ADM/JSM, 2008 WL 1827604 (D. Minn. April 23, 2008) ............ 28

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ................................................................................................ 5

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ................................................................................................. 27

*Baribeau v. City of Minneapolis*,
   596 F.3d 465 (8th Cir. 2010) .............................................................................. 13, 18

*Beck v. Ohio*,
   379 U.S. 89 (1964) ................................................................................................... 16

*Belcher v. Mansi*,
   569 F. Supp. 379 (D.R.I. 1983) ............................................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................... 5

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ................................................................................................. 13

*Berg v. United States*,
   Civil No. 03-4642 (MJD/JSM), 2007 WL 425448 (D. Minn. Feb. 2, 2007) ............... 23

*Berglund v. City of Maplewood*,
   173 F. Supp. 2d 935 (D. Minn. 2001) ........................................................................ 7

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ..................................................................................... 5

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Branzburg v. Hayes,*
  408 U.S. 665 (1972) ........................................................................................ 7

*Brown v. City of Golden Valley,*
  534 F. Supp. 2d 984 (D. Minn. 2008) ................................................. 19, 20, 21

*Chamber of Commerce v. Federal Election Comm'n,*
  69 F.3d 600 (D.C. Cir. 1995) ....................................................................... 24

*Channel 10, Inc. v. Gunnarson,*
  337 F. Supp. 634 (D. Minn. 1972) ............................................ 7, 8, 11, 13 17

*Chicago Acorn v. Metro. Pier & Exposition Authority,*
  150 F.3d 695 (7th Cir. 1998) .......................................................................... 9

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) .................................................................................. 23, 27

*Crumley v. City of St. Paul,*
  324 F.3d 1003 (8th Cir. 2003) ..................................................................... 22

*Davis v. Federal Election Comm'n,*
  128 S. Ct. 2759 (2008) ................................................................................. 23

*Davis v. Norris,*
  249 F.3d 800 (8th Cir. 2001) ......................................................................... 9

*Deshawn E. v. Safir,*
  156 F.3d 340 (2d Cir. 1998) ................................................................... 27, 28

*Dixon v. Lowery,*
  302 F.3d 857 (8th Cir. 2002) ................................................................. 13, 14

*Enten v. District of Columbia,*
  675 F. Supp. 2d 42 (D.D.C. 2009) ............................................................... 25

*Fordyce v. City of Seattle,*
  55 F.3d 436 (9th Cir. 1995) ........................................................................... 8

*Globe Newspaper Co. v. Superior Court,*
  457 U.S. 596 (1982) .................................................................................. 8, 9

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Hernandez v. Cremer,*
  913 F.2d 230 (5th Cir. 1990) ....................................................................... 28

*Hodgers-Durgin v. De La Vina,*
  199 F.3d 1037 (9th Cir. 1999) ..................................................................... 27

*Kedzior v. County of Hennepin,*
  No. C5-90-2277, 1991 Minn. App. LEXIS 358
  (Minn. Ct. App. Apr. 16, 1991) ............................................................. 20, 21

*Kelly v. City of St. Paul,*
  Civil No. 09-461 (JRT/JSM), 2010 U.S. Dist. LEXIS 110779
  (D. Minn. Oct. 18, 2010) ......................................................................... 6, 13

*LaDuke v. Nelson,*
  762 F.2d 1318 (9th Cir. 1985) ..................................................................... 28

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)................................................................................ 25, 26

*Minnesota v. Dickerson,*
  508 U.S. 366 (1993)..................................................................................... 14

*Nation Magazine v. United States Department of Defense,*
  762 F. Supp. 1558 (S.D.N.Y. 1991) .......................................................... 9, 10

*National Congress for Puerto Rican Rights v. City of New York,*
  75 F. Supp. 2d 154 (S.D.N.Y. 1999) ........................................................... 28

*New Hampshire Right to Life Political Action Committee v. Gardner,*
  99 F.3d 8 (1st Cir. 1996).............................................................................. 26

*New York Times v. United States,*
  403 U.S. 713 (1971)..................................................................................... 11

*Richards v. United States,*
  369 U.S. 1 (1962)......................................................................................... 19

*Richmond Newspapers v. Virginia,*
  448 U.S. 555 (1980)....................................................................................... 7

*Roaden v. Kentucky,*
  413 U.S. 496 (1973)......................................................................... 14, 15, 17

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Roe v. City of New York,*
151 F. Supp. 2d 495 (S.D.N.Y. 2001) ........................................................ 23, 25, 26, 27

*Scheuer v. Rhodes,*
416 U.S. 232 (1974) ................................................................................................... 5

*Shannon v. Koehler,*
616 F.3d 855 (8th Cir. 2010) ..................................................................... 18, 19, 20, 21

*Sherrill v. Knight,*
569 F.2d 124 (D.C. Cir. 1977) ............................................................................. 9, 10

*Smith v. City of Cumming,*
212 F.3d 1332 (11th Cir. 2000) ................................................................................ 8

*Steffel v. Thompson,*
415 U.S. 452 (1974) ................................................................................................. 27

*Stevens v. N.Y. Racing Ass'n,*
665 F. Supp. 164 (E.D.N.Y. 1987) ......................................................................... 10

*Tennessee v. Garner,*
471 U.S. 1 (1985) ..................................................................................................... 18

*Texas v. Johnson,*
491 U.S. 397 (1989) ................................................................................................... 8

*Thomas v. County of Los Angeles,*
978 F.2d 504 (9th Cir. 1992) .................................................................................. 28

*United States v. 216 Kenmore Ave.,*
657 F. Supp. 2d 1060 (D. Minn. 2009) .................................................................... 5

*United States v. Kelly,*
529 F.2d 1365 (8th Cir. 1976) ................................................................................ 14

*United States v. Williams,*
604 F.2d 1102 (8th Cir. 1979) ................................................................................ 16

*Wells v. Schnick,*
Civil No. 08-144 (RHK/RLE), 2008 WL 4110697 (D. Minn. Aug. 27, 2008) ............. 22

*Wertish v. Krueger,*
    433 F.3d 1062 (8th Cir. 2006) ....................................................................................... 22

## TABLE OF AUTHORITIES (CONTINUED)

<u>Page(s)</u>

**Statutes**

28 U.S.C. § 2676 ....................................................................................... 20

28 U.S.C. § 2680(h) ....................................................................................... 18, 19

Minn. Stat. § 609.06 ....................................................................................... 19

## PRELIMINARY STATEMENT

In this action, Plaintiffs seek to vindicate their rights to freedom of the press and to be free from unreasonable seizure. Plaintiffs suffered violations of these rights when working as journalists covering the 2008 Republican National Convention, at which the United States Secret Service was the lead federal agency responsible for security. Defendants Brian Luley, a previously-unidentified United States Secret Service Agent, and the United States of America (the "Federal Defendants") have moved to dismiss all of the claims asserted against them in the Amended Complaint. The Amended Complaint contains ample allegations to support Plaintiffs' claims against the Federal Defendants seeking damages under the Federal Tort Claims Act ("FTCA") and against Special Agent Luley for violations of the U.S. Constitution, as well as their claims for declaratory and injunctive relief.

The Federal Defendants contend that, as a matter of law, the United States Secret Service is entitled—without provocation or cause—to restrain journalists from gathering and reporting news, and to facilitate such action by engaging in battery against those journalists and effecting unreasonable seizures of their validly issued press credentials. The Federal Defendants urge the Court to hold that because other law enforcement personnel had already (unlawfully) arrested and handcuffed the Plaintiffs and because Plaintiffs were, at some point, able to resume reporting, the Federal Defendants should be protected by official or qualified immunity under a sort of "minimal harm, no foul" rule. But the Federal Defendants cannot hide behind the actions of other law enforcement

officials—*with whom they planned and coordinated security*—and cannot excuse their violation of Plaintiffs' constitutional rights by pointing a finger at the local police as having first violated Plaintiffs' rights.

The Federal Defendants assert as grounds for dismissal a blended assortment of theories sounding in immunity.  The Amended Complaint easily withstands dismissal on immunity grounds, regardless of which theory is applied.  The allegations in the Amended Complaint, viewed, as they must be, in the light most favorable to the Plaintiffs, demonstrate that Special Agent Luley violated Plaintiffs' clearly established First Amendment right to gather information and their clearly established right to be free from unreasonable seizure.  That is all that is required to withstand the Federal Defendants' assertion of a qualified immunity defense to Plaintiffs' constitutional claims. The Federal Defendants' reliance on state law official immunity with respect to Plaintiffs' tort claims is similarly unavailing.  Official immunity does not protect a malicious or willful act, which is the intentional commitment of a wrongful act without legal justification or excuse.  The Amended Complaint alleges that the Plaintiffs were handcuffed and under the control of local law enforcement officers, purportedly in connection with some nonviolent crime, were not fleeing or resisting arrest, posed no risk to anyone's safety, and had not failed to comply with officers' commands.  Special Agent Luley's willful violation of Plaintiffs' First and Fourth Amendment rights under these circumstances was not legally justified and therefore does not warrant the protection of official immunity.

## INTRODUCTION AND BACKGROUND

Plaintiffs Amy Goodman, Nicole Salazar, and Sharif Kouddous are journalists who report for the nationally syndicated television and radio news program Democracy Now!   Amended Complaint ("AC") ¶¶ 3, 13-15, 17-18, 22-23.   In September 2008, Plaintiffs reported from St. Paul and Minneapolis on the Republican National Convention (the "Convention") and surrounding events, broadcasting their coverage of this much-watched event across the nation on hundreds of syndicated stations.   The Convention was a major nationwide news event, drawing wide attention.   In fact, the United States Department of Homeland Security designated the Convention a "National Special Security Event," which meant that the United States Secret Service became the lead federal agency in charge of planning and executing security at and around the convention site.   AC ¶¶ 63-64.   In that capacity, the Secret Service engaged with state and local police to plan and enforce security around the convention site.   AC ¶ 65; Memorandum in Support of Federal Defendants' Motion to Dismiss Based in Part on Qualified Immunity ("MTD") at 16.

On September 1, 2008, police violently arrested Ms. Salazar while she was videotaping demonstrators and the police response to the demonstrations, despite her visible press pass and media equipment, her protestations that she was an accredited member of the press, and the total absence of any signs that she posed a threat.   AC ¶¶ 77-96.   While Ms. Salazar was left on the ground bleeding, bruised, and in pain, an officer intentionally disabled her camera.   AC ¶¶ 98-99.   Mr. Kouddous saw Ms. Salazar

arrested and went to help her, telling the police that Ms. Salazar was a journalist.  Instead of releasing Ms. Salazar, police slammed Mr. Kouddous against a wall, kicked and punched him in the chest and back, and then arrested him and seized his microphone.  AC ¶¶ 116-23.  When Ms. Goodman heard that Ms. Salazar and Ms. Kouddous had been arrested, she cut short an interview at the convention center and rushed to the scene.  Upon her arrival, the award-winning, 25-year veteran reporter wearing her press pass was pushed against a wall, handcuffed, and pushed to the ground.  AC ¶¶ 14, 139-49.

The United States Secret Service, the lead federal agency responsible for security, was also on the scene, but made no effort to temper the local police force from their gross, intentional violations of Plaintiffs' First and Fourth Amendment rights.  To the contrary, Special Agent Luley, acting on behalf of the Secret Service, took his own, aggravating steps to deny Ms. Goodman's and Mr. Kouddous's First and Fourth Amendment rights by forcefully seizing their press passes without a warrant and saying, "You're not going to need this today."  AC ¶¶ 152-54.

## ARGUMENT

### I.     Standard of Review

In considering the Federal Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6),[1] the Court must construe the Amended Complaint liberally, assume that the

---

[1] The Federal Defendants also seek dismissal of Plaintiffs' claims under the Minnesota state constitution for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  The Court need not address this argument, because Plaintiffs claims against the Federal Defendants are brought under the First and Fourth Amendments of the U.S. Constitution and the Federal Tort Claims Act, not the Minnesota state constitution.

facts alleged therein are true, and draw all reasonable inferences from those facts in Plaintiffs' favor. *United States v. 216 Kenmore Ave.*, 657 F. Supp. 2d 1060, 1065 (D. Minn. 2009). The Amended Complaint should not be dismissed if, when viewed in this light, it alleges facts sufficient to state a plausible claim for relief. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' It is not, however, a 'probability requirement.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted)). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts [alleged] is improbable, and "that a recovery is very remote and unlikely."'" *Id.* (quoting *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232 (1974))). In short, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

## II.     The Federal Defendants Are Not Entitled to Dismissal of the Constitutional Claims Because the Amended Complaint Alleges that Special Agent Luley Violated Plaintiffs' Clearly Established Constitutional Rights

Qualified immunity does not warrant dismissal of Plaintiffs' constitutional claims because the Amended Complaint alleges facts indicating that Special Agent Luley violated Plaintiffs' clearly established First and Fourth Amendment rights. The defense of qualified immunity must be rejected if (1) the facts alleged, viewed in the light most favorable to the Plaintiffs, demonstrate a deprivation of Plaintiffs' constitutional rights;

and (2) those rights were clearly established at the time of the deprivation. *Kelly v. City of St. Paul*, Civil No. 09-461 (JRT/JSM), 2010 U.S. Dist. LEXIS 110779, at *15 (D. Minn. Oct. 18, 2010). The facts alleged in the Amended Complaint plainly state that Special Agent Luley deprived Plaintiffs of their First and Fourth Amendment rights, which were clearly established on September 1, 2008.

The Federal Defendants assert that Special Agent Luley did not violate Plaintiffs' First Amendment rights because local law enforcement officers had already placed Plaintiffs under arrest, and that Special Agent Luley's conduct therefore could not have interfered with Plaintiffs' newsgathering activities. The Federal Defendants further contend that because Special Agent Luley did not arrest, seize, or detain the Plaintiffs, or use excessive force against them, no violation of Plaintiffs' Fourth Amendment rights occurred. As explained below, both of these arguments are unavailing.

**A.    Plaintiffs' Allegations Concerning Seizure of the Plaintiffs' Press Passes State a Claim for Violations of Plaintiffs' Clearly Established First Amendment Rights**

As alleged in the Amended Complaint, while Ms. Goodman and Mr. Kouddous were under unlawful arrest by law enforcement forces activated to provide security at the Convention, Special Agent Luley seized their press credentials without reason or provocation and stated, "You're not going to need this today," or words to that effect. These actions reflected his intent to restrain them from engaging in journalistic activities (for which they had already been credentialed under the security policies established in

6

connection with the Convention) for *at least* the rest of that day.[2]  AC ¶ 152.  As alleged,

Special Agent Luley's conduct violated Ms. Goodman's and Mr. Kouddous's First

Amendment rights to gather information and violated the First Amendment guarantee of

freedom of the press.  Such conduct is not protected by qualified immunity.

> **1.    Plaintiffs' First Amendment right to gather information regarding the Convention and surrounding events was clearly established in September 2008.**

Ms. Goodman and Mr. Kouddous had a clearly established right to gather

information regarding the Convention and surrounding events.   The United States

Supreme Court has repeatedly recognized that the First Amendment protects the right of

the press to gather the news.  *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)

("news gathering" qualifies for First Amendment protection because "without some

protection for seeking out the news, freedom of the press could be eviscerated");

*Richmond Newspapers v. Virginia*, 448 U.S. 555, 576-77 (1980) (adding that freedom of

speech includes "freedom to listen," and stating that the rights to speak and publish

regarding events of public interest would lose meaning if the right to access the event

could be "foreclosed arbitrarily").   This Court has similarly recognized the First

Amendment protection of the right to gather information.   *Berglund v. City of*

*Maplewood*, 173 F. Supp. 2d 935, 945 (D. Minn. 2001); *see also Channel 10, Inc. v.*

---

[2] The duration of the violation of Plaintiffs' First Amendment rights does not render Special Agent Luley's conduct subject to qualified immunity.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Stevens v. N.Y. Racing Ass'n*, 665 F. Supp. 164, 177 (E.D.N.Y. 1987).

*Gunnarson*, 337 F. Supp. 634, 638 (D. Minn. 1972) ("[I]t seems clear that employees of the news media have a right to be in public places and on public property to gather information, photographically or otherwise.").  Moreover, several United States Courts of Appeals have recognized that the right to gather information includes a right to cover matters of public interest.  *See, e.g.*, *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (upholding claim under section 1983 that police officer slammed plaintiff's camera into his face when he was filming a protest "in an attempt to prevent or dissuade him from exercising his First Amendment right to film matters of public interest").

The Convention—at which the presidential candidate to be put forth by one of the nation's two major political parties would be nominated—and the events surrounding the Convention were undeniably matters of public interest.  *Cf. Am. Broad. Cos. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977) ("[P]rimary elections are so fundamental a part of our governmental elective process as to be on a par with general elections."); *cf. also Texas v. Johnson*, 491 U.S. 397, 406 (1989) (noting that the "expressive, overtly political nature" of a demonstration was "overwhelmingly apparent" in light of the fact that it coincided with the 1984 Republican National Convention).

Access to events of public interest is necessary to the effective exercise of the First Amendment right to gather information.  *See, e.g.*, *Globe Newspaper Co. v. Superior*

*Court*, 457 U.S. 596, 603-06 (1982) (discussing First Amendment right of access to criminal trials).   Denial of such access must therefore be based on a "weighty" justification, *id.*, and not an arbitrary determination.  *See Chicago Acorn v. Metro. Pier & Exposition Authority*, 150 F.3d 695, 702 (7th Cir. 1998) (affirming district court's requirement that governmental operator of recreational and commercial complex formulate criteria for rental of facilities and treat groups without favoritism); *cf. Davis v. Norris*, 249 F.3d 800 (8th Cir. 2001) (rejecting prison officials' qualified immunity defense to First Amendment challenge to prison policy limiting number of photographs inmates were permitted to retain in their cells, because record lacked indication of any legitimate penological interest served by the policy).

Moreover, it is well established that the Secret Service may not arbitrarily deny individual members of the press access to facilities or events that have been established for access by the press.  To the contrary, the Secret Service must have *compelling* reasons for doing so.  *See Sherrill v. Knight*, 569 F.2d 124, 129 (D.C. Cir. 1977) ("White House press facilities having been made publicly available as a source of information for newsmen, the protection afforded newsgathering under the first amendment guarantee of freedom of the press requires that this access not be denied arbitrarily or for less than compelling reasons."); *see also Am. Broad.*, 570 F.2d at 1083 ("[O]nce there is a public function, public comment, and participation by some of the media, the First Amendment requires equal access to all of the media or the rights of the First Amendment would no longer be tenable."); *Nation Magazine v. United States Department of Defense*, 762 F.

Supp. 1558, 1573 (S.D.N.Y. 1991) (stating rule that government may not arbitrarily exclude some journalists from war theatre in which other journalists are permitted, but denying claims as moot because challenged regulations had been lifted); *Stevens v. N.Y. Racing Ass'n*, 665 F. Supp. 164, 175 (E.D.N.Y. 1987) ("When some members of the press are given access to cover an event, the state cannot arbitrarily impose limits on other press representatives' access to the news."); *Belcher v. Mansi*, 569 F. Supp. 379, 384 (D.R.I. 1983) (holding that once school board adopted policy of allowing tape recording of its meetings, a decision to prevent recording could not be made arbitrarily).

Not just the individual members of the press, but also the public itself, have a critical First Amendment interest in avoiding arbitrary limitations on newsgathering activities:  "Not only newsmen and the publications for which they write, but also the public at large have an interest protected by the first amendment in assuring that restrictions on newsgathering be no more arduous than necessary, and that individual newsmen not be arbitrarily excluded from sources of information."  *Sherrill*, 569 F.2d at 129-30.

**2.    Special Agent Luley's conduct, as alleged, violated Plaintiffs' clearly established First Amendment rights.**

Plaintiffs' Amended Complaint sufficiently alleges that Special Agent Luley's conduct violated Ms. Goodman's and Mr. Kouddous's clearly established First Amendment rights of freedom of the press and therefore easily withstands Defendants' qualified immunity defense.  The press passes permitted Plaintiffs to enter the convention center and interview delegates on the Convention floor—that is, to gather news about the

10

Convention through means established by the governmental entities responsible for security at the Convention. AC ¶¶ 15, 19, 23. Without those passes, Plaintiffs could not return to the Convention floor to continue the news reporting they had engaged in earlier that day. Special Agent Luley had *no* permissible justification—let alone a compelling one—for confiscating Ms. Goodman's and Mr. Kouddous's press passes, and the Federal Defendants have articulated none. Rather, Special Agent Luley denied Ms. Goodman and Mr. Kouddous their rights on a wholly unacceptable basis—namely, their coverage of the protests associated with the Convention. His conduct therefore violated Plaintiffs' First Amendment rights by arbitrarily or on an impermissible basis denying them access to events of public interest to which other members of the press were admitted.

Special Agent Luley's conduct also constituted an improper prior restraint in violation of Plaintiffs' First Amendment rights. In *Channel 10, Inc. v. Gunnarson*, 337 F. Supp. 634 (D. Minn. 1972), this Court held that police officers effected a prior restraint by seizing a journalist's film camera when he was standing on a public sidewalk covering the arrest of burglary suspects in a ski shop. Referring to and relying on *New York Times v. United States*, 403 U.S. 713 (1971), the Court in *Gunnarson* stated, "If publication cannot be prevented indirectly by injunction after a hearing in a case involving the national security, *a fortiori*, the direct seizure and holding of a camera and film belonging to a newsman on any lesser ground is surely constitutionally invalid." *Gunnarson*, 337 F. Supp. at 637. Likewise here, Special Agent Luley's seizure of Plaintiffs' press

11

credentials without a compelling reason effected a prior restraint by interfering with their ability to gather and report the news relating to the Convention and surrounding events.

The Federal Defendants attempt to deflect attention away from Plaintiffs' clearly sufficient allegations concerning Special Agent Luley's unconstitutional conduct by contending that his conduct was permissible because Plaintiffs had already been placed under arrest by the other defendants in this case.  That argument is unavailing.  To accept that argument, the Court would effectively rule that Plaintiffs' unlawful arrest claims against the non-Federal Defendants are without substance.  The Federal Defendants cannot, on a Rule 12(b)(6) motion, implicitly seek a judgment on the pleadings rejecting the claims against other defendants—claims that those defendants have not even moved to dismiss—in order to meet the Federal Defendants' burden of showing that the claims in the Amended Complaint fail to allege unconstitutional conduct by Special Agent Luley.  Even if that approach were viable, the Federal Defendants have made *no* attempt to argue that the Amended Complaint does not sufficiently allege that the conduct of the non-Federal Defendants was unconstitutional and that the arrests were therefore unlawful.  Moreover, the Federal Defendants have cited no authority for the proposition that no constitutional violation occurs because the victim's constitutional rights are already being violated in another manner and/or by another actor.

**B.**    **Plaintiffs' Allegations Concerning the Warrantless Seizure of the Press Passes State a Claim for Violations of Plaintiffs' Clearly Established Fourth Amendment Rights**

As alleged in the Amended Complaint, Special Agent Luley's conduct also constituted an unconstitutional warrantless seizure of Ms. Goodman's and Mr. Kouddous's press passes in violation of their clearly established Fourth Amendment rights. The Federal Defendants contend that qualified immunity protects Special Agent Luley's conduct because he did not use excessive force against the Plaintiffs. That argument is inapposite, however, because Plaintiffs' Fourth Amendment claims against the Federal Defendants turn on the warrantless seizure of Plaintiffs' press credentials, not use of excessive force. As explained below, Special Agent's conduct is not protected by qualified immunity.

Ms. Goodman and Mr. Kouddous had a clearly established right under the Fourth Amendment to be free from unreasonable seizures. *Kelly v. City of St. Paul*, 2010 U.S. Dist. LEXIS 110779, at *16-17 (D. Minn. Oct. 18, 2010); *see also Gunnarson*, 337 F. Supp. at 637 (warrantless seizure of camera violated journalist's First and Fourth Amendment rights). Even individuals who are detained by police retain Fourth Amendment rights, and may not be subjected to unreasonable seizures. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 482-83 (8th Cir. 2010) (assuming that pretrial detainees retain Fourth Amendment protections (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979))). A seizure effected without a warrant is per se unreasonable, unless it falls within a recognized exception to the warrant requirement. *Dixon v. Lowery*, 302 F.3d

857, 862 (8th Cir. 2002). Moreover, a seizure of property implicating the First Amendment "demands a greater adherence to the Fourth Amendment warrant requirement." *United States v. Kelly*, 529 F.2d 1365, 1372 (8th Cir. 1976); *see also Roaden v. Kentucky*, 413 U.S. 496, 504 (1973) (stating that the seizure of property implicating First Amendment protection "calls for a higher hurdle in the evaluation of reasonableness").

Plaintiffs' allegations clearly indicate that Special Agent Luley's seizure of Ms. Goodman's and Mr. Kouddous's press credentials did not fall within any of the recognized exceptions to the warrant requirement, particularly when the First Amendment implications of the seizure are considered. Accordingly, the seizure violated Plaintiffs' clearly established Fourth Amendment rights.

The seizure of the press credentials clearly did not fall within the "plain view" exception to the warrant requirement, which permits a warrantless seizure if "police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). In *United States v. Kelly*, the Eighth Circuit held that a warrantless seizure of allegedly obscene books and magazines violated the Fourth Amendment. The Court rejected application of the plain view exception, stating that "[t]his is not a case involving contraband or objects dangerous in themselves." *Kelly*, 529 F.2d at 1373. The Court in *Kelly* explained the application of Fourth Amendment principles where a seizure also implicates First Amendment rights:

14

It is well established that under certain circumstances the police may seize evidence in plain view without a warrant.  Because of the *nature* of the property seized in the instant case, however, the seizure cannot be justified on the basis of the plain view exception. "A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material." *Roaden v. Kentucky*, 413 U.S. 496, 501-03, 37 L. Ed. 2d 757, 93 S. Ct. 2796 (1973).  The Fourth Amendment should be read in conjunction with the First Amendment, rather than "in a vacuum." *Id*.  The proper seizure of books and magazines, which are presumptively protected by the First Amendment, demands a greater adherence to the Fourth Amendment warrant requirement.  As the Supreme Court stated in [*Roaden*]:

> The seizure of instruments of a crime, such as a pistol or a knife, or "contraband or stolen goods or objects dangerous in themselves," are to be distinguished from quantities of books and movie films when a court appraises the reasonableness of the seizure under Fourth or Fourteenth Amendment standards.

413 U.S. at 502 (citations omitted).  Consequently, in the absence of exigent circumstances in which police must act immediately to preserve evidence of the crime, we deem the warrantless seizure of materials protected by the First Amendment to be unreasonable.

*Id.* at 1372 (some citations omitted); *see also Roaden*, 413 U.S. at 501-06 (holding that warrantless seizure of obscene film during public exhibition of the film was unreasonable, because First Amendment nature of film required careful adherence to warrant requirement and pre-seizure judicial determination of obscenity).

The "incriminating character" of the press credentials at issue in this case certainly was not immediately apparent.  Indeed, the press passes were not contraband and had no "incriminating character" whatsoever (and Special Agent Luley had no basis to believe that they had).  Further, Plaintiffs' allegations reveal no exigent circumstances that could have justified the seizure, and the Federal Defendants have suggested none.

The Federal Defendants cannot claim that Special Agent Luley's conduct was constitutional as a seizure incident to a lawful arrest because the validity of Ms. Goodman's and Mr. Kouddous's arrests are at issue in this litigation.  For the Federal Defendants to prevail on this argument, the Court must determine that Plaintiffs' unlawful arrest allegations are meritless.  Unless the Federal Defendants can show that Plaintiffs' allegations against the non-Federal Defendants are without merit—which they have not attempted to do—the Fourth Amendment claims against Special Agent Luley for seizure of Plaintiffs' press credentials cannot be dismissed based on an exception to the warrant requirement.  *See, e.g.*, *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (holding unconstitutional a warrantless search of a person incident to a warrantless arrest that was determined to be unlawful because it was not based on probable cause); *United States v. Williams*, 604 F.2d 1102, 1123 (8th Cir. 1979) (because an arrest was unlawful, government could not justify seizure of property from arrestee's person as incident to a lawful arrest, nor could it justify seizure of drugs and scales from house based on plain view exception to warrant requirement).  Officers did not have probable cause to arrest Ms. Goodman or Mr. Kouddous.  Rather, Plaintiffs have alleged that both their arrests and the seizure of their press passes were motivated by hostility toward their exercise of their First Amendment rights in covering the protests surrounding the Convention.  Under such circumstances, and because the arrests were not based on probable cause, Special Agent Luley's seizure of Plaintiffs' press credentials was not justified.

In addition to the fact that the arrests were not lawful, the warrantless seizure cannot be justified as incident to a lawful arrest because of the First Amendment implications of the press passes.  In *Roaden v. Kentucky*, the Supreme Court held that the warrantless seizure of an obscene film, incident to the arrest of the proprietor of the theater for violation of a state obscenity statute, was unreasonable under the Fourth Amendment.  The Court reasoned that the seizure of material that falls "arguably within First Amendment protection" without a warrant "is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards.   The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness." 413 U.S. at 503-04.

Similarly, Special Agent Luley's seizure of Plaintiffs' press passes worked a prior restraint and interfered with Plaintiffs' First Amendment right of freedom of the press, and therefore invokes a "higher hurdle" in examining the "Fourth Amendment warrant requirements because we examine what is 'unreasonable' in the light of the values of freedom of expression."  *Id.* at 504; *see also Gunnarson*, 337 F. Supp. at 637-38 (warrantless seizure of journalist's news camera violated the Fourth Amendment and constituted an unlawful prior restraint under the First Amendment).  As in *Roaden*, the lack of a warrant in these circumstances is not excused by the fact that Ms. Goodman and Mr. Kouddous were being placed under arrest when the seizure occurred.

"'To determine the constitutionality of a seizure we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Baribeau*, 596 F.3d at 483 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  In the circumstances of this case, the Federal Defendants can establish *no* interest in seizing the credentials of members of the press who were wrongfully detained, in handcuffs, and posed no threat to law enforcement.  Nor can they establish any exception to the Fourth Amendment's requirement that seizures be conducted pursuant to a validly issued warrant.  Thus, the seizure was not reasonable under the circumstances.  *Cf. Shannon v. Koehler*, 616 F.3d 855, 863 (8th Cir. 2010) (rejecting qualified immunity defense to excessive force claim because "considering the facts and circumstances of this particular case, we cannot say that a reasonable officer on the scene would have felt the need to use *any* force against Shannon") (citation omitted, emphasis added).  Because Special Agent Luley had no legitimate basis for seizing the press credentials, and because the First Amendment nature of the press credentials demands a greater adherence to Fourth Amendment principles, the balance of interests clearly weighs in Plaintiffs' favor.  The Federal Defendants' qualified immunity defense must be rejected.

## III.    Plaintiffs Have Stated a Claim for Battery Against the Federal Defendants

The Federal Tort Claims Act waives the sovereign immunity of the United States with respect to certain intentional torts, including battery, committed by federal law enforcement officers.  28 U.S.C. § 2680(h).  Thus, the United States is subject to liability

for Special Agent Luley's conduct if that conduct constituted a battery under Minnesota law.  *See* 28 U.S.C. § 1346 (liability determined "in accordance with the law of the place where the act or omission occurred"); *see also Richards v. United States*, 369 U.S. 1, 6, 9 (1962).

Under Minnesota law, battery is "an intentional unpermitted offensive contact with another."  *Brown v. City of Golden Valley*, 534 F. Supp. 2d 984, 995 (D. Minn. 2008) (internal quotations omitted), *aff'd*, 574 F.3d 491 (8th Cir. 2009).  Minnesota law authorizes law enforcement officers to use reasonable force when effectuating an arrest or "executing any other duty imposed upon the public officer by law."  Minn. Stat. § 609.06.  Thus, in those contexts, law enforcement officers can be liable for battery only if they use an unreasonable amount of force in carrying out those functions.  *Brown*, 534 F. Supp. 2d at 995.

Even assuming that Special Agent Luley was "executing [a] duty imposed upon [him] by law," Plaintiffs have stated a claim for battery.  As explained above, the Amended Complaint reveals *no* permissible justification for the forceful confiscation of Ms. Goodman's and Mr. Kouddous's press passes.  Rather, the allegations therein plausibly indicate that Special Agent Luley's conduct was designed and intended for the sole purpose of retaliating against or restraining Ms. Goodman's and Mr. Kouddous's exercise of their constitutional rights.  Thus, the forceful removal of their press passes was not reasonable under the circumstances.  *Cf. Shannon v. Koehler*, 616 F.3d 855, 863 (8th Cir. 2010) (rejecting qualified immunity defense to excessive force claim because

"considering the facts and circumstances of this particular case, we cannot say that a reasonable officer on the scene would have felt the need to use *any* force against Shannon" (citation omitted, emphasis added)).[3]

## IV.   The Federal Defendants Are Not Entitled to State Law Official Immunity

Official immunity does not bar the battery claim, as the Federal Defendants contend.  The Federal Defendants assert that official immunity applies because Special Agent Luley did not use excessive force against the Plaintiffs.  That is not the standard.

Official immunity is available to a law enforcement officer only if the challenged conduct was (1) discretionary rather than ministerial, and (2) not malicious or willful. *Brown*, 534 F. Supp. 2d at 995-96 (internal quotations omitted, alteration in original); *Kedzior v. County of Hennepin*, No. C5-90-2277, 1991 Minn. App. LEXIS 358, at *8-9 (Minn. Ct. App. Apr. 16, 1991).  "'Malice means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right.'"   *Brown*, 534 F. Supp. 2d at 996 (internal quotations omitted); *see also Brown*, 574 F.3d at 500-01.  Plaintiffs have alleged more than adequate facts to establish malice.  AC ¶¶ 118-19, 121, 125, 145, 147, 152-54, 208.

In *Brown v. City of Golden Valley*, this Court rejected a police officer's motion for summary judgment on claims that he committed battery by willfully violating the plaintiff's right to be free from the use of excessive force in effectuating an arrest of "a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed

---

[3] The Federal Defendants' argument regarding the bar of 28 U.S.C. § 2676 is inapposite at the pleading stage.

little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator," and the Eighth Circuit affirmed.  *Brown*, 574 F.3d at 499-501; *see also Kedzior*, 1991 Minn. App. LEXIS 358, at *9 (holding that factual issues remained regarding whether police conduct against nonviolent detainee constituted battery).  Similarly here, as alleged in the Amended Complaint, Special Agent Luley's forceful removal of the press passes was a willful violation of Plaintiffs' First and Fourth Amendment rights, and was without legal justification.  Plaintiffs have alleged that they were (unlawfully) handcuffed and in the custody of local law enforcement officers, purportedly in connection with some (mysterious) nonviolent crime, were not fleeing or resisting arrest, posed no risk to anyone's safety, and had not failed to comply with officers' commands.

The Federal Defendants' assertion that no battery occurred because the harm suffered by Plaintiffs was purportedly minor is unavailing.  Reasonableness is determined in light of the facts and circumstances of the case, *Shannon*, 616 F.3d at 863, and in the circumstances of this case, *no* force was justified.  The Federal Defendants' "minimal harm, no foul" argument would grant immunity to a law enforcement officer who walked up to a fully restrained, nonviolent arrestee and slapped him in the face for no reason. That cannot be the rule.

Furthermore, the Federal Defendants' reliance on excessive force cases, *e.g.*, MTD at 23, in arguing that official immunity applies because Special Agent Luley did not act willfully or maliciously in light of Plaintiffs' purportedly minor harm conflates qualified

immunity principles with the official immunity standard. *Wertish* and *Wells*, the cases cited by the Federal Defendants, both apply the qualified immunity standard to constitutional claims based on excessive force, relying on *Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003), in which the Eighth Circuit held that minor injuries cannot support a claim of excessive force. Those cases are inapposite, however, because Plaintiffs' battery claim does not turn on a claim of excessive force. *See Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006); *Wells v. Schnick*, Civil No. 08-144 (RHK/RLE), 2008 WL 4110697 (D. Minn. Aug. 27, 2008). *Wertish* itself acknowledges that the test for official immunity is a subjective standard, while the qualified immunity standard is objective. 433 F.3d at 1067. The official immunity defense to Plaintiffs' battery claim turns on the subjective "malice" standard, not the excessive force standard (from which the asserted de minimis harm rule derives). The allegations relating to Special Agent's comment to the Plaintiffs; the manner in which he removed their press passes; and the facts and circumstances surrounding that conduct, including the fact that the Secret Service was the lead federal agency in charge of planning and executing security around the convention site and the fact that the Plaintiffs' role as journalists was clear and that they were already under control of local law enforcement officers, all indicate that Special Agent Luley intentionally violated Plaintiffs' known rights. The Court should deny the Federal Defendants' motion to dismiss Plaintiffs' battery claim.

**V.   Plaintiffs Have Standing to Pursue Claims for Declaratory and Injunctive Relief Against the Federal Defendants**

In addition to claims for damages and injunctive relief, the Amended Complaint also seeks declaratory relief against the Federal Defendants.   AC Prayer for Relief at subsection b.   The Federal Defendants have not asserted any separate basis for dismissal of the claim for declaratory relief, nor could they.   In contrast to a claim for injunctive relief, no threat of future harm is required to maintain an action for declaratory relief. *Berg v. United States*, Civil No. 03-4642 (MJD/JSM), 2007 WL 425448, at *9 (D. Minn. Feb. 2, 2007).   Because, for all the reasons explicated above, Plaintiffs have stated a claim against the Federal Defendants, they may seek a declaration that their rights were violated.  *Id.*

The Federal Defendants assert that Plaintiffs lack standing to seek injunctive relief because Plaintiffs purportedly face no threat of future injury.   Plaintiffs have alleged a concrete, particularized, and actual threat that the Federal Defendants will in the future violate Plaintiffs' constitutional rights when Plaintiffs seek to cover news events at which the Federal Defendants are engaged in security planning and enforcement.   Plaintiffs therefore have standing to seek injunctive relief.

"To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling."   *Davis v. Federal Election Comm'n*, 128 S. Ct. 2759, 2768 (2008).   Plaintiffs seeking injunctive relief must also establish a "real and immediate threat of repeated injury" demonstrated by more than

"past exposure to illegal conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see Roe v. City of New York*, 151 F. Supp. 2d 495, 501-02 (S.D.N.Y. 2001). Where, as here, expressive activity is at issue, "[a] party has standing to challenge, pre-enforcement, even the constitutionality of a statute if First Amendment rights are arguably chilled, so long as there is a credible threat of prosecution." *Chamber of Commerce v. Federal Election Comm'n*, 69 F.3d 600, 603 (D.C. Cir. 1995).

Plaintiffs have alleged that their First Amendment rights were violated by the Federal Defendants' "policies, practices, and/or actions that culminated in the unreasonable use of force and Plaintiffs' unlawful arrests, and which violated Plaintiffs' rights as journalists to gather information and cover matters of public interest, including law enforcement activity in public places." AC at ¶ 6. In particular, in March 2007 the United States Department of Homeland Security designated the Convention as a "National Special Security Event," which resulted in the United States Secret Service becoming the lead federal agency in charge of planning and executing security at and around the convention site. AC at ¶¶ 63-68. Subsequently, the Federal Defendants, "acting according to official policies and practices, were responsible for the violations of Plaintiffs' rights." AC at ¶¶ 73, 75. The Federal Defendants' acts "were part of a deliberate policy of intimidation" aimed at suppressing Plaintiffs' First and Fourth Amendment rights under the United States Constitution. AC at ¶ 74.

Plaintiffs cannot exercise their rights to the unabridged freedom of press under the First Amendment without facing a legitimate and genuine "threat of enforcement" of the

24

same policies and procedures previously invoked by the Federal Defendants.  This threat is real and not speculative because Plaintiffs intend to "return to Minnesota to cover future newsworthy events, including both small- and large-scale protests"—conduct that is protected by the First Amendment.  AC at ¶ 7.  Further, Plaintiffs intend to "cover similar protests and gatherings throughout the United States as part of their journalistic activities," and thus "fear that they will be subjected to similar unlawful actions by [the Federal Defendants] as they conduct their job duties in the future."  *Id.*

Accordingly, Plaintiffs have alleged sufficient facts to demonstrate Article III standing.  *See, e.g., Abdell v. City of New York*, No. 05 Civ. 8453(RJS)(JCF), 2009 WL 1270455, at *4 (S.D.N.Y. May 5, 2009) (protesters arrested in New York City during the 2004 RNC had standing to seek injunctive relief where they alleged they intended to participate in future demonstrations); *see also Enten v. District of Columbia*, 675 F. Supp. 2d 42, 47-48 (D.D.C. 2009) (plaintiff had standing to seek an injunction barring arrest for constitutionally protected speech); *Roe v. City of New York*, 151 F. Supp. 2d 495, 501-506 (S.D.N.Y. 2001) (plaintiffs had standing to seek injunctive relief where they faced fear of arrest).

The Federal Defendants incorrectly argue that standing is lacking because (1) the allegations in Plaintiffs' Amended Complaint are vague and lacking in detail, and (2) Plaintiffs' claims are too speculative and removed to demonstrate a realistic threat of being subjected to similar treatment in the future.  MTD at 13-14.

First, there is no heightened pleading requirement for allegations of standing, as the Federal Defendants assert. *Abdell*, 2009 WL 1270455 at *4. "Accordingly, at the pleading stage, plaintiffs need not provide more than general factual allegations to support their standing." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Roe*, 151 F. Supp. 2d at 502). In any event, Plaintiffs have specifically alleged that they have a credible fear that they will be subjected to similar unlawful actions that violate their First Amendment rights. AC at ¶ 7.

Second, there is no per se rule requiring more than one past act—or any past act— as a basis for finding a likelihood of future injury. *See New Hampshire Right to Life Political Action Committee v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996) (for purposes of Article III standing, "a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing, even if there is no history of past enforcement"). Here, Plaintiffs' First and Fourth Amendment rights were violated by Federal Defendants acting in accordance with official policies and procedures. Based on the Federal Defendants' violations of Plaintiffs' rights and also the alleged ongoing practice of targeting journalists for unlawful arrest, there is a realistic threat that Plaintiffs would be subjected to similar treatment in the future because the same policies and procedures would be applied to Plaintiffs again when they return to Minnesota or cover similar protests or gatherings throughout the United States. Furthermore, the United States Secret Service will likely coordinate security at many future events, including those that are designated as National Special Security Events. To the extent the same

26

agency would be involved in policy formulation at future large, newsworthy events, Plaintiffs are likely to be subjected to these policies and practices again, since covering such events is an essential part of their professional duties. *See Roe*, 151 F. Supp. 2d at 505 ("Plaintiffs are likely to have standing if they are directly implicated by a statute or official police policy."); *Steffel v. Thompson*, 415 U.S. 452 (1974) (plaintiff had twice been threatened with arrest and had witnessed his companion's arrest for violating the challenged statute).

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), on which the Federal Defendants rely, is inapposite. In *Lyons*, the plaintiff was injured as a result of being choked by Los Angeles police at the time of his arrest, and sought injunctive relief against the Los Angeles Police Department against being choked in the future. *Id.* at 98. The Supreme Court held that plaintiff's allegations of injury were "speculative" because such chokeholds were not authorized by the Police Department. *Id.* at 109. That is not the case here, where a threat of law enforcement action chills the exercise of protected speech under the First Amendment. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'") (citation omitted).

Further, unlike *Lyons*, Plaintiffs were arrested for entirely lawful conduct.  Other courts have appropriately distinguished *Lyons* in cases where the plaintiffs have been subjected to police action for engaging in legal activity.  *See, e.g., Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041 (9th Cir. 1999) (standing exists for plaintiffs merely driving near border); *Deshawn E. v. Safir*, 156 F.3d 340, 345 (2d Cir. 1998) (plaintiffs had standing to seek equitable relief because the misconduct they challenged was undertaken pursuant to "officially endorsed policies"); *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992) (standing to enjoin police brutality directed at innocent minority citizens); *Hernandez v. Cremer*, 913 F.2d 230, 234-35 (5th Cir. 1990) (courts should not be reluctant to find that plaintiff will be subject to future police conduct placing him at risk of injury where "the injury alleged to have been inflicted did not result from an individual's disobedience of official instructions [or any other] form of misconduct"); *LaDuke v. Nelson*, 762 F.2d 1318, 1321 (9th Cir. 1985) (standing to enjoin unlawful INS searches directed at innocent migrant farm workers); *National Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y. 1999) (standing exists for innocent plaintiffs who were victims of unconstitutional stop and frisks).[4]

---

[4] *Arias v. USCIS*, Civ. No. 07-1959 ADM/JSM, 2008 WL 1827604 (D. Minn. April 23, 2008), is also inapposite.  In that case, the district court held that plaintiffs lacked standing because they did not allege any facts demonstrating that they would be a target of a law enforcement effort. *Id.* at *11-12. Here, Plaintiffs face a genuine threat of arrest at small- and large-scale protests in Minnesota and similar protests throughout the United States, including at future political conventions.

## CONCLUSION

For the foregoing reasons, the allegations against the Federal Defendants adequately state a claim against them, and no immunity protects them from liability. Further, Plaintiffs have standing to seek an injunction against the Federal Defendants' future violation of Plaintiffs' constitutional rights.  The motion to dismiss should be denied in its entirety.

Dated:  January 6, 2011

Respectfully submitted,

__/s/ Steven Alan Reiss_____
Steven Alan Reiss (pro hac vice, NY # 2167864)
Jennifer H. Wu (pro hac vice, NY # 4312625)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Christine T. Di Gugliemo (pro hac vice, DE # 4848)
Weil, Gotshal & Manges LLP
1201 N. Market St., Suite 1402
Wilmington, DE 19801
Tel:  (302) 656-1034
Fax:  (302) 656-1405

Albert T. Goins (MN # 126159)
301 Fourth Avenue South
378 Grain Exchange Building
Minneapolis, Minnesota 55415
Tel: (612) 339-3848
Fax: (612) 339-3853

Bruce D. Nestor (MN # 318024)
3547 Cedar Avenue South
Minneapolis, Minnesota 55407
Tel: (612) 659-9019
Fax: (612) 436-3664

Anjana Samant (pro hac vice, NY #
4267019)
Alexis Agathocleous (pro hac vice, NY #
4227062)
William P. Quigley (pro hac vice, NY #
4870366)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York New York 10012
Tel: (212) 614-6445
Fax: (212) 614-6499

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 10-1966 JNE/AJB

_____

AMY GOODMAN, NICOLE SALAZAR and
SHARIF ABDEL KOUDDOS,

                                    Plaintiffs,

                v.

CITY OF ST. PAUL, ET AL.,

                                    Defendants

**CERTIFICATE OF
COMPLIANCE**

The undersigned attorney certifies that this memorandum complies with the length

limitation of D. Minn. Local Rule 7.1(d) and the type-size limitation of D. Minn. Local

Rule 7.1(f).  The memorandum has 8,616 words of type, font size 13.  The memorandum

was prepared using Microsoft Word 97-2002, and the word count has been applied to

include all text, including headings, footnotes, and quotations.

Dated:  January 6, 2011

                                       /s/ Steven Alan Reiss
                                    Steven Alan Reiss (pro hac vice, NY #
                                    2167864)
                                    Jennifer H. Wu (pro hac vice, NY #
                                    4312625)
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Tel: (212) 310-8000
                                    Fax: (212) 310-8007

Christine T. Di Gugliemo (pro hac vice, DE # 4848)
Weil, Gotshal & Manges LLP
1201 N. Market St., Suite 1402
Wilmington, DE 19801
Tel:  (302) 656-1034
Fax:  (302) 656-1405

Albert T. Goins (MN # 126159)
301 Fourth Avenue South
378 Grain Exchange Building
Minneapolis, Minnesota 55415
Tel: (612) 339-3848
Fax: (612) 339-3853

Bruce D. Nestor (MN # 318024)
3547 Cedar Avenue South
Minneapolis, Minnesota 55407
Tel: (612) 659-9019
Fax: (612) 436-3664

Anjana Samant (pro hac vice, NY # 4267019)
Alexis Agathocleous (pro hac vice, NY # 4227062)
William P. Quigley (pro hac vice, NY # 4870366)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York New York 10012
Tel: (212) 614-6445
Fax: (212) 614-6499

Attorneys for Plaintiffs